

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| DEBORAH B. PRIVETT, | ) | |
|     Plaintiff, | ) | Civil Action No. 6:07cv00004 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: Hon. Michael F. Urbanski |
|     Commissioner of Social Security, | ) | United States Magistrate Judge |
|     Defendant. | | |

## REPORT AND RECOMMENDATION

Plaintiff, Deborah B. Privett ("Privett"), brought this action pursuant to 42 U.S.C. § 1383(c)(3), incorporating 42 U.S.C. § 405(g), for review of the Commissioner of Social Security's ("Commissioner") final decision denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). This case is now before the court on cross motions for summary judgment and by Order dated August 22, 2007, was referred to the undersigned for Report and Recommendation. On this appeal, Privett argues that the Commissioner erred by: 1) failing to find that she had no "severe" impairment before the expiration of her date last insured,[1] and 2) failing to give appropriate weight to the opinion of her treating physician. Privett also asks the court to supplement the record to include a letter written by her physician that was inadvertently omitted from the records submitted to the Office of Disability Adjudication and Review. Having reviewed the record, and after briefing and oral argument, the undersigned recommends that the court supplement the record with the omitted physician's letter. The undersigned also concludes that the Commissioner's decision is

---

[1] The ALJ found that Privett acquired sufficient quarters of coverage to remain insured through March 31, 2005. (R. 31) This date is referred to throughout this Report and Recommendation as Privett's "date last insured."

supported by substantial evidence and recommends that the court affirm the Commissioner's decision.

## I.

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The Commissioner employs a five-step process to evaluate DIB claims. 20 C.F.R. § 404.1520; see also Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The Commissioner considers, in order, whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Id. If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a

2

prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functioning capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Privett was born on November 6, 1958 and completed school through the tenth grade. (Administrative Record ("R.") at 196) Prior to her alleged onset of disability, Privett worked as a cashier and deli worker at a convenience store and as an assistant manager at a convenience store. (R. 197) Privett filed an application for DIB on February 16, 2005, alleging disability beginning February 4, 2004. (R. 31) Her application was denied initially and upon reconsideration. (R. 37-38) Privett then requested an administrative hearing. (R. 49)

An administrative hearing was held on March 23, 2006. (R. 190) Based on the testimony presented at this hearing, including that of a vocational expert ("VE"), and the medical evidence of record, the ALJ determined that Privett was not disabled within the meaning of the Act. (R. 31) At step one of the disability evaluation process, the ALJ found that Privett had not engaged in substantial gainful activity since her alleged onset date of disability. (R. 33) At step two, the ALJ found that Privett had degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome, irritable bowel syndrome, diverticulosis, gastroesophageal reflux disease, and depression through her date last insured, although these medically determinable impairments did not significantly limit her ability to perform basic work-related activities for 12 consecutive months. Accordingly, the ALJ concluded that Privett did not have a severe impairment or

3

combination of impairments, and thus was not disabled at any time through her date last insured. (R. 33-36)

Privett requested that the Appeals Council review the ALJ's decision, (R. 28), and later, submitted additional medical evidence and a statement from her attorney to the Appeals Council for their review. (R.10–24; 187–89) The Appeals Council reviewed the new evidence and the ALJ's decision and found that, with the exception of a 2004 treatment note, the newly submitted evidence was from a period after Privett's date last insured and did not warrant a change in the ALJ's decision. (R. 7-10) Accordingly, the ALJ's decision became the final decision of the Commissioner. Privett now appeals that decision to this court.

Privett disputes the Commissioner's finding that she was not disabled and argues that the decision is not supported by substantial evidence. Specifically, she argues that the Commissioner erred by finding that Privett did not have a "severe" impairment before the expiration of her date last insured and failed to give appropriate weight to the opinion of her treating physician.

### III.

Privett first argues that the Commissioner erred in finding that her carpal tunnel syndrome, fibromyalgia, irritable bowel syndrome, and migraine headaches were not severe. "An impairment can be considered as 'not severe' if only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (emphasis in original); see also 20 C.F.R. § 404.1521. In this case, the Commissioner found that Privett had no impairment or combination of impairments that was

4

"severe" prior to her date last insured, as her impairments did not significantly limit her ability to perform basic work-related activities[2] for 12 consecutive months. The undersigned finds that there is substantial evidence in the medical record to support this conclusion.

**Carpal Tunnel Syndrome**

The medical evidence of record indicates that on April 19, 2004, Privett presented to orthopaedic surgeon, Dr. Michael J. Diminick, M.D., with pain and numbness in her left hand and triggering in her left thumb. (R. 120) Dr. Diminick noted that Privett had carpal tunnel release and trigger thumb release performed on her right hand in 2004 and was told at the time of that surgery that she had bilateral disease. Dr. Diminick diagnosed Privett with carpal tunnel syndrome and trigger thumb on her left hand and on April 27, 2004, performed a left trigger thumb release and carpal tunnel release on Privett's left hand. (R. 120–125)

Privett returned for a follow-up visit on May 7, 2004 with Dr. Diminick, who noted that Privett was "doing well with no complaints" and that "[h]er symptoms are nicely improved." (R. 119) On June 7, 2004, Privett returned to Dr. Diminick and reported that she was having persistent pain and some numbness in her hand. Although he did not know why she was still experiencing pain, Dr. Diminick noted that Privett's sensation was grossly intact and that there was no significant dysfunction and instructed Privett to increase her activity and begin therapy. (R. 118) On August 11, 2004, Dr. Diminick noted that Privett's postoperative symptoms were improved, despite some pain and inflammation over the incision site, and observed that Privett had good pinch strength and intact sensation. He prescribed anti-inflammatory medication for

---

[2] Examples of basic work-related activities include walking, standing, sitting, lifting, pushing, pulling, and reaching, as well as capacities for understanding, carrying out, and remembering simple instructions. 20 C.F.R. § 404.1521(b).

5

the pain and swelling (R. 117)

There record contains no additional treatment notes or complaints related to Privett's left hand until June 2005, well after her post-operative period and several months after her date last insured. (R. 172, 175, 177) On June 28, 2005 and July 19, 2005, Privett presented to rheumatologist, Dr. Eric Kenny, MD, for evaluation of her musculo-skeletal pain, including pain in both hands. (R. 175) Although Privett had a positive bilateral Tinel's sign,[3] which lead Dr. Kenny to diagnose her with carpal tunnel syndrome, she had no overlying swelling, atrophy, or tenderness in her hands and wrists, as well as normal grip strength and full and painless range of motion of the digits, hand, and wrist. (R. 176, 172) In his treatment notes from the July 28 visit, Dr. Kenny reported that x-rays of Privett's hands were normal. (R. 173)

A Function Report completed by Privett on February 27, 2005 provides further support for the ALJ's conclusion that Privett's carpal tunnel syndrome was not a serious impairment. In this report, Privett noted that she was capable of using her hands to perform activities such as driving, doing housework, caring for her mother-in-law, and preparing meals. (R. 106-109) Thus, even were the court to accept Privett's argument that Dr. Kenny's treatment notes establish that Privett had ongoing problems with her hands for more than 12 months, there is substantial evidence to support the Commissioner's conclusion that these problems were not severe, as there is no evidence that they significantly limit her physical ability to do work activities.

**Fibromyalgia**

Contrary to the ALJ's statement that there was "no evidence supporting the claimant's

---

[3] Tinel's sign is "a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve," which indicates "a partial lesion or the beginning regeneration of the nerve." Dorland's Illustrated Medical Dictionary 1703 (30th ed. 2003).

allegations of fibromyalgia ... prior to March 31, 2005," (R. 34), the record shows that Dr. Kenny suspected that Privett had fibromyalgia on January 17, 2000,[4] and diagnosed Privett with "FM," a commonly used medical abbreviation for fibromyalgia, on January 19, 2000, after observing "tender FM distribution." (R. 180) Despite the existence of this diagnosis however, the record contains no further complaints of or treatment notes related to Privett's fibromyalgia until after her date last insured. (R. 175-77) Although there is evidence that Privett received a prescription for a narcotic pain medication as early as March 5, 2003, she maintained employment as a deli worker and cashier through February of 2004. (R. 135, 94, 198). The record contains no evidence suggesting that Privett's fibromyalgia significantly limited her ability to perform basic work activities. Accordingly, there is substantial evidence to support the Commissioner's conclusion that Privett's fibromyalgia was not a severe impairment.

### Irritable Bowel and Migraine Headaches

The record indicates that from April, 2004 through August, 2004, Privett was treated by Dr. David M. Wodicka, M.D., for irritable bowel syndrome (IBS) and related symptoms such as bloating, abdominal discomfort, gas, and constipation. (R. 129-32) There is no evidence that these symptoms caused functional limitations, and Dr. Wodicka's treatment notes demonstrate that Privett's symptoms were well-controlled with medication. (R. 129-31) On May 7, 2004, Dr.

---

[4] Plaintiff filed a motion to supplement the record with a letter, written by Dr. Kenny to Dr. David M. Wodicka on January 17, 2000, in which Dr. Kenny wrote that he agreed with Dr. Wodicka and suspected Privett's diagnosis was "most likely fibromyalgia." Plaintiff asserts that the letter was inadvertently omitted from the records submitted to the Office of Disability Adjudication and Review. While the undersigned acknowledges that Dr. Kenny's letter is neither new nor material, the undersigned considered Dr. Kenny's letter, in addition to the medical record, in reaching the conclusion that ALJ's decision is supported by substantial evidence.

Wodicka noted that he "called in some Levbid and that has basically extinguished her symptoms," (R. 131), and on August 24, 2004, Dr. Wodicka noted "Deborah has been doing well. She took the Zelnorm. It is the best thing that has ever happened to her. She loves it." (R. 128) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Thus, the undersigned finds that substantial evidence supports the ALJ's conclusion that Privett's IBS was not severe.

Regarding Privett's migraine headaches, Privett reported on February 27, 2005 that she suffered from a least six migraines a month (R. 113) and that Dr. Wodicka began prescribing Axert to treat Privett's migraines in 2003. (R. 115) Dr. Wodicka, in letters submitted approximately a year after Privett's date last insured, noted that Privett suffers from chronic migraine headaches which, in combination with her fibromyalgia, may cause her to miss more than two days of work each month. (R. 185-86) Aside from Dr. Wodicka's letter and Privett's own notes, however, the record lacks any evidence demonstrating that Privett suffered from migraine headaches during the relevant time period. Accordingly, there is substantial evidence to support the ALJ's conclusion that Privett's migraine headaches were not severe.

## IV.

Privett next argues that the ALJ failed to give appropriate weight to her treating physician's opinion that Privett was unable to work due to her fibromyalgia, IBS, and migraine headaches. The opinion of a treating physician regarding the nature and severity of the claimant's impairments is given controlling weight if the ALJ finds that the treating source's opinion is well supported by the objective evidence of record and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(d); Mastro v. Apfel, 270

8

F.3d 171, 178 (4th Cir. 2001). The ALJ is to consider a number of factors which include the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527(d). A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d) ("We will always give good reasons in our notice of determination or decision for the weight we give you to your treating source's opinion.").

The responsibility for deciding issues such as whether an individual is disabled is an administrative finding that is reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2); SSR 96-5(p). Thus, treating source opinions on such issues, while they must not be ignored, "are never entitled to controlling weight or special significance." SSR 96-5p.

In this case, Privett's treating physician, Dr. Wodicka, opined in a letter written in February, 2006 that Privett had been unable to work since December, 2004 due to symptoms arising from fibromyalgia, IBS, and chronic migraine headache. (R. 184) Dr. Wodicka submitted another letter in March of 2006, in which he remarked that Privett's IBS symptoms would require six to eight bathroom breaks from work each day and that Privett's migraine headaches might cause her to miss more than two days from work each month. (R. 186) The ALJ found, however, that Dr. Wodicka's opinion was not consistent with either his own treatment notes or the medical record as a whole. While conceding that Privett may have had the limitations mentioned in Dr. Wodicka's letters as of the dates the letters were written, the ALJ afforded no weight to Dr. Wodica's opinion with regard to limitations prior to March, 2005. (R.

9

36)

The undersigned finds that the ALJ's decision to afford no weight to Dr. Wodicka's opinion is supported by substantial evidence. First, although Dr. Wodicka's February, 2006 letter provided that Privett's pain made it difficult to stand for any length of time, neither Dr. Wodicka's treatment notes, nor the record as a whole demonstrate that Privett had problems standing prior to her date last insured. Second, there is no evidence within the record that supports Dr. Wodicka's statement that Privett's IBS symptoms would require six to eight bathroom breaks each day. Rather, Dr. Wodicka's own treatment notes show that Privett's IBS symptoms were well-controlled with medication. (R. 127-35) Finally, although Dr. Wodicka opined that Privett would frequently miss work due to her fibromyalgia symptoms and migraine headaches, there is, as discussed above, no evidence indicating that these impairments significantly limited Privett's ability to function prior to her date last insured.

Privett also contends that the ALJ was required to re-contact Dr. Wodicka prior to dismissing his opinion if the ALJ could not ascertain the basis of his opinion. The undersigned disagrees. The Social Security Regulations require an ALJ to re-contact a treating source for clarification when the source provides an opinion on an issue reserved to the Commissioner and the basis for that opinion is unclear. SSR 96-5p. In this case, the basis for Dr. Wodicka's opinion that Privett is disabled is clear. As grounds for his opinion, Dr. Wodicka described the effect of Privett's fibromyalgia, IBS, and migraine headache symptoms on her ability to function. (R. 185-86) The ALJ considered Privett's impairments as alleged by Dr. Wodicka, and ultimately found that they were not supported by the evidence of record. The undersigned finds that substantial evidence supports this conclusion.

10

## V.

For the foregoing reasons, the undersigned concludes that the ALJ properly evaluated the opinion of Privett's treating physician and found that Privett did not have a "severe" impairment prior to the expiration of her date last insured. Accordingly, the undersigned recommends that the Commissioner's decision be affirmed, the plaintiff's motion for summary judgment be denied, and the defendant's motion for summary judgment be granted.

The Clerk is directed to transmit the record in this case to the Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

ENTER: This 16th day of April, 2008

Hon. Michael F. Urbanski
United States Magistrate Judge